UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
 TESSA KNOX and PAMELA KASSEN,         :
                                       :
                          Plaintiffs,  :        20cv4401 (DLC)
                                       :
             -v-                       :        OPINION AND ORDER
                                       :
 IRONSHORE INDEMNITY INC.,             :
                                       :
                          Defendant.   :
                                       :
-------------------------------------- X

APPEARANCES:

For plaintiffs Tessa Knox and Pamela Kassen:
William Irvin Dunnegan
Dunnegan & Scileppi LLC
350 Fifth Avenue, 76th Floor
New York, NY 10118

For defendant Ironshore Indemnity Inc.:
Alexander Asher Truitt
Luigi Spadafora
Winget Spadafora & Schwartzberg, LLP
45 Broadway, 32nd Floor
New York, NY 10006

DENISE COTE, District Judge:

     Tessa Knox and Pamela Kassen ("Plaintiffs") have sued

Ironshore Indemnity Inc. ("Ironshore"), an insurance company, to

collect a judgment that they have procured against its insured

on behalf of themselves and a class.  Because Plaintiffs have

failed to comply with the conditions precedent for this action,

Ironshore's motion to dismiss this action is granted.

## Background

The following facts are taken from Plaintiffs' first amended complaint ("FAC"), documents integral to it, and other documents properly considered on a motion to dismiss. Plaintiffs Knox and Kassen were female employees of John Varvatos Enterprises, Inc. ("Varvatos").  Knox was employed as a sales associate at a Varvatos retail store in East Hampton, New York from August 2016 to February 2017.  Kassen worked as a sales professional at a Varvatos retail store in California. Varvatos is a designer and retailer of clothing marketed primarily for men.  Varvatos gave its male sales employees, but not its female sales employees, an allowance for the purchase of Varvatos clothes.

On May 16, 2016, Ironshore issued a liability insurance policy to an entity affiliated with Varvatos.  The insurance policy covers Varvatos for, inter alia, certain claims related to its employment practices.

On February 1, 2017, Knox sued Varvatos.  Knox alleged that Varvatos' policy of providing a clothing allowance to male but not female employees violated the Equal Pay Act, 29 U.S.C. § 206(d), the New York Equal Pay Act, N.Y. Lab. Law § 194, and the New York Human Rights Law, N.Y. Exec. Law § 296.  Tessa Knox v. John Varvatos Enterprises, Inc., No. 17 Civ. 772(GWG) (the "Underlying Action").  On May 26, 2017, Knox moved for

2

conditional certification of the Underlying Action as a representative collective action under the Equal Pay Act. Shortly thereafter, Varvatos tendered the defense of the Underlying Action to Ironshore, and Ironshore agreed to provide insurance coverage related to the litigation.

Knox then amended her complaint to include a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. On October 17, 2017, the court granted Knox's motion for conditional approval of a collective action under the Equal Pay Act. After the Equal Pay Act claim was conditionally approved as a collective action, Plaintiff Kassen opted into the litigation. On November 23, 2017, Knox moved to certify a class of Varvatos female sales associates pursuant to Fed. R. Civ. P. 23, and the court granted Knox's motion on February 22, 2018. On May 10, 2018, Ironshore notified Varvatos that it would not, in fact, cover losses resulting from the Underlying Action.

In 2020, the Underlying Action proceeded to trial. A jury found Varvatos liable and awarded liquidated and punitive damages on a per-employee basis. Based on the jury's per-employee award and the applicable rate of pre-judgment interest, the court calculated a judgment of $3,516,051.23 against Varvatos. Judgment was entered on March 24, 2020. On April 2, Plaintiffs moved for an award of over $1.7 million in attorneys'

fees; that application remains pending.  Varvatos moved for post-trial relief under Fed. R. Civ. P. 50 and 59 on April 21, 2020.

On May 6, 2020, Varvatos filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware. In re John Varvatos Enterprises, Inc., No. 20-11043 (Bankr. D. Del. 2020) ("Bankruptcy Proceeding").  Pursuant to 11 U.S.C. § 362(a), the Underlying Action was automatically stayed.  On September 4, 2020, the bankruptcy court lifted the automatic stay solely to allow for the amount of the claim against Varvatos in the Underlying Action to be fixed.  On January 12, 2021, the district court granted the motion for post-trial relief, ordering a remittitur or a new trial on the issue of damages.

Plaintiffs filed this action on June 9, 2020, seeking a declaratory judgment under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, and monetary relief under New York Insurance Law § 3420.  On July 24, Ironshore moved to dismiss.  This motion became fully submitted on October 16.

## Discussion

Ironshore has moved to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Geffner v. Coca-Cola Co., 928 F.3d 198, 199 (2d Cir. 2019). When deciding a motion under Rule 12(b)(6), a court must "constru[e] the complaint liberally, accept[] all factual allegations as true, and draw[] all reasonable inferences in the plaintiff's favor." Coalition for Competitive Electricity, Dynergy Inc. v. Zibelman, 906 F.3d 41, 48-49 (2d Cir. 2018).

When a court evaluates the adequacy of a complaint that is subject to a motion to dismiss, it may consider facts alleged in the complaint, "any written instrument attached to [the complaint] as an exhibit, materials incorporated in [the complaint] by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." Sierra Club v. Con-Strux, LLC, 911 F.3d 85, 88 (2d Cir. 2018). Additionally, a court may "take judicial notice of relevant matters of public record." Giraldo v. Kessler, 694 F.3d 161, 164 (2d Cir. 2012). In this Opinion, the Court takes judicial notice of filings in the Underlying Action and the Bankruptcy Proceeding.

Plaintiffs seek to recover damages from Ironshore because they claim that they have obtained a judgment from Ironshore's insured, Varvatos, and Varvatos has failed to pay. "Under the

common law, an injured person possessed no cause of action against the insurer of the tort feasor." Lang v. Hanover Ins. Co., 3 N.Y.3d 350, 353 (2004) (citation omitted).  As a result, "[w]hen a plaintiff acquired a judgment against the insured and the insured failed to satisfy the judgment due to insolvency, the plaintiff could not sue the insurance company directly." Id.  New York,[1] however, has adopted a direct action statute, which allows an injured party to bring suit directly against an insurer under certain circumstances.

Under New York's direct action statute, an "action may be maintained . . . against the insurer . . . to recover the amount of a judgment against the insured" by "any person who . . . has obtained a judgment against the insured or the insured's personal representative, for damages for injury sustained or loss or damage occasioned during the life of the policy or contract."  N.Y. Ins. Law § 3420(b).  A direct action may "be maintained against [an] insurer under the terms of the policy or contract for the amount of [a] judgment" if a "judgment against the insured . . . shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, or upon the insured, and upon the

---

[1] The parties' briefs assume that New York's direct action statute applies, and "such implied consent . . . is sufficient to establish choice of law."  Alphonse Hotel Corporation v. Tran, 828 F.3d 146, 152 (2d Cir. 2016)(citation omitted).

insurer."  N.Y. Ins. Law § 3420(a)(2).  When these conditions
are met, a "[direct] action . . . may be maintained against the
insurer" except "during a stay or limited stay of execution
against the insured" on the judgment at issue.  Id.  Finally,
under New York's direct action statute a plaintiff "'stands in
the shoes' of the insured" and "can have no greater rights than
the insured" to recover under the policy.  D'Arata v. New York
Cent. Mut. Fire Ins. Co., 76 N.Y.2d 659, 665 (1990).

This action must be dismissed because Plaintiffs have
failed to state a claim for relief under the New York direct
action statute.  Under New York law, the aforementioned
prerequisites to suit under the direct action statute are
substantive elements of the cause of action created by the New
York direct action statute, and if they are not satisfied, a
plaintiff who brings suit under the direct action statute fails
to state a claim for relief.  Thrasher v. U.S. Liab. Ins. Co.,
19 N.Y.2d 159, 166 (1967); see also NAP, Inc. v. Shuttletex,
Inc., 112 F.Supp.2d 369, 373 (S.D.N.Y. 2000)(holding that the
requirements of the New York direct action statute are "integral
predicates for stating and sustaining a cause of action under
the statute").  Here, at least three elements of the direct
action statute have not been satisfied.

First, Plaintiffs no longer have a judgment against
Varvatos.  On January 12, 2021, the court in the Underlying
Action ordered a new trial on the issue of damages unless the
plaintiffs agree to remittitur.  No revised judgment has been
entered.  Since Plaintiffs do not have a judgment against the
insured party Varvatos, Plaintiffs have not satisfied a
condition precedent to suit under the direct action statute.
Lang, 3 N.Y.3d at 355.

Second, Plaintiffs have brought suit under the direct
action statute in the presence of a stay of execution of the
judgment against the insured in the Underlying Action.  Varvatos
has filed for Chapter 11 bankruptcy, which triggered an
automatic stay of the Underlying Action.  The bankruptcy court
overseeing the Bankruptcy Proceeding has lifted the automatic
stay of the Underlying Action for the sole purpose of fixing the
amount of the claim against Varvatos; the bankruptcy court has
not lifted the stay to allow for execution of the judgment
against Varvatos.  Indeed, the bankruptcy court has explicitly
held that any collection from Varvatos on the judgment in the
Underlying Action shall take place solely through the Bankruptcy
Proceeding, rather than through the Underlying Action.  The
direct action statute states that an action may not be
maintained in the presence of a stay of execution of the

underlying judgment, and since the stay on the ultimate collection of the judgment remains effective, Plaintiffs cannot maintain a direct action against Ironshore.

Third, Plaintiffs have not pleaded compliance with the provision of the New York direct action statute requiring them to serve both the insurer and the insured with a copy of the judgment and notice of entry of the judgment.  Plaintiffs plead that, upon information and belief, "Ironshore received notification of the Judgment against Varvatos on the day it was entered."  This is insufficient to plead the Plaintiffs' compliance with the service requirement.  While the statute does not "specifically provide a method" for giving the required notice, Thrasher, 19 N.Y.2d at 167, Plaintiffs must take some action to serve the insurer in order to comply with the statute. See Guayara v. Hudson Ins. Co., 852 N.Y.S.2d 359, 361 (2d Dep't. 2008).

Since the prerequisites to suit under the New York direct action statute are not satisfied, Plaintiffs have not stated a claim for relief under the direct action statute, and Ironshore's motion to dismiss must be granted.  Plaintiffs make two arguments as to why this action may proceed despite their failure to satisfy the requirements of New York's direct action statute, but neither is persuasive.

9

Plaintiffs argue that the requirements of the New York direct action statute are state procedural rules that are inapplicable in federal court under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).  It does not appear that the Second Circuit Court of Appeals has addressed whether, under Erie, New York's direct action statute is a procedural rule (and thus inapplicable in federal court), or a substantive law (and thus binding on federal courts).  It has, however, repeatedly held that direct action statutes analogous to New York's are substantive because they "create[] a right of action against a defendant where no such right previously existed."  State Trading Corp. of India v. Assuranceforeningen Skuld, 921 F.2d 409, 416 (2d Cir. 1990)(Connecticut direct action statute); Collins v. Am. Auto. Ins. Co., 230 F.2d 416, 419 (2d Cir. 1956)(Louisiana direct action statute); see also NAP, Inc., 112 F.Supp.2d at 374 (concluding, based on State Trading and Collins, that the New York direct action statute is a substantive law applicable in federal court).  Plaintiffs' argument is therefore unavailing.

Plaintiffs also contend that, even if their claim under the New York direct action statute must be dismissed, their claim under the federal Declaratory Judgment Act survives.  The Declaratory Judgment Act is "procedural only and does not create

an independent cause of action."  Chevron Corp. v. Naranjo, 667
F.3d 232, 244-45 (2d Cir. 2012)(citation omitted).  Thus, a
plaintiff may not use the Declaratory Judgment Act to "create
legal rights that do not otherwise exist."  Id. at 245.  This
principle mandates dismissal of Plaintiffs' declaratory judgment
claim.  Since Plaintiffs have failed to state a claim under the
New York direct action statute, they cannot circumvent the
requirements of that statute simply by styling their claim as
one for a declaratory judgment.  See Zyburo v. Continental Cas.
Co., 60 F.Supp.3d 531, 534 (S.D.N.Y. 2014)("If plaintiff does
not present a valid cause of action [under the New York direct
action statute] then this Court has no authority to issue a
declaratory judgment remedy.").

## Conclusion

Ironshore's September 2, 2020 motion to dismiss is granted.
The Clerk of Court shall enter judgment for Ironshore and close
the case.

Dated:    New York, New York
          January 26, 2021

_____
DENISE COTE
United States District Judge

11